JORGE AGRAMONTE GADEA, ETC., Plaintiff and Appellant, *v.* PORTO RICAN AND AMERICAN INSURANCE COMPANY, Defendant and Appellee.

No. R-67-101.  Decided June 27, 1968.

*Ernesto Maldonado Pérez* and *C. Zoraida del Río* for appellant. *Martínez Muñoz, Agrait Oliveras & Otero* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

PER CURIAM: The conjugal partnership of Jorge Agramonte and his wife Josefa Alverio filed a complaint against its insurer, Porto Rican and American Insurance Company, to recover the losses suffered as a result of a fire which occurred in his commercial establishment.

A plenary suit on the merits was held[1] and the Superior Court, Bayamón Part, rendered judgment dismissing the complaint with costs, after making the following:

---

[1] Previously, the court had denied a motion for summary judgment presented by plaintiff and subsequently we refused to review said decision by certiorari.

## "Findings of Fact

"1. On February 17, 1964, a fire broke out in Jorge Agramonte Gadea's jewelry shop situated at 100 Dr. Veve Street, Bayamón.

"2. On said date the Porto Rican and American Insurance Co. had an insurance policy which covered the risk of the loss of plaintiff's merchandise and equipment in the aforementioned premises, as a result of fire. The policy covered the risk of loss of merchandise up to $10,000 and up to $3,000 for furniture and equipment. Said policy became effective on June 8, 1962 for a period of five years.

"3. Plaintiff bought the jewelry business in the year 1961. We do not know the volume of his jewelry business or the earnings or losses it had during said preceding year or by reason thereof.

"4. Plaintiff filed his income tax returns with the Commonwealth of Puerto Rico for the years 1962 and 1963. The parties stipulated and the court concludes that for the purpose of assessment and payment of the municipal license tax to the Municipality of Bayamón, plaintiff, according to reports rendered by him or to estimates made by the municipality, had a gross volume of business or sales in his jewelry store amounting to $6,000 in the year 1961; to $15,000 in the year 1962; and to $30,000 in the year 1963.

"5. Plaintiff filed his income tax returns with the Commonwealth of Puerto Rico for the year 1962. From the income tax returns filed by him corresponding to said year it appears that at the end of that year, that is, on December 31, 1962, he had a stock inventory in his jewelry business amounting to $1,400.

"6. During the year 1963 plaintiff performed a remodeling of his business starting in the month of March up to November 1963. The parties stipulated and the court concludes that plaintiff bought merchandise for his business amounting to $13,388.70, during the years 1962, 1963 and 48 days of the year 1964 prior to the fire. During the days between January 1, 1964 and February 17, 1964, a total of 48 days including holidays, plaintiff bought merchandise amounting to $2,295.45 for his jewelry business.

"7. An examination of the income tax returns corresponding to 1963 reveals that the only income reported by him to the Commonwealth during said year were from one source only, to

wit, from 'R. P. Farnsworth' and it amounted to $4,250.12. Plaintiff did not report any income during said year, resulting from the operation of his business, if he had any. Plaintiff's explanation to the effect that an officer of the Bureau of Income Tax had granted him, verbally, an extension of two years to file a supplementary income tax return corresponding to his business, deserves no credit to the court.

"8. Plaintiff was in charge of preparing the entries in his account books and the bookkeeping of the business during the years 1962, 1963 and the months of the year 1964 prior to the fire. Plaintiff does not know, or cannot remember, and he did not make any report to the court as to the volume of sales during the year 1963, or during the forty-eight days of the year 1964 prior to the fire. All that the court has is an estimate of the gross volume of plaintiff's business during the year 1963 for the purpose of the municipal license tax. The $30,000 of the *gross* volume of business is a fact for consideration. But plaintiff did not place this court in a condition to determine the *net* volume of his business. The cost of the sales could have been 50% or 25% of the gross volume, but the court cannot speculate. The basic facts being missing any further conclusion would be a conjecture.

"9. The amount of the purchases during the year 1963 together with the initial inventory reported, plus the purchases during the 48 days prior to the fire is a fact for consideration, but not by itself sufficient to settle plaintiff's loss resulting from the fire. Plaintiff did not report any income from his business corresponding to the year 1963 in his income tax returns. Plaintiff was then in a better position than on the date of the trial to compile the data for his income tax returns. At that time his memory was clearer than on the day of the trial. It is illogical to believe that he had more information available nearly three years after the fire. In any event, plaintiff did not place this court in a position to make a determination as to the actual loss suffered, free from speculations and conjectures.

"10. Arbitrarily taking a gross volume of sales of $30,000 and that the cost of the sales, as to which no evidence whatsoever was offered, amounted to 50% or $15,000, the situation would be that plaintiff had an average monthly volume of business amounting to $1,250. If we add to this fact the experience to the effect that the sales during the last months of the year increase

as a result of the Christmas spirit, we find that the excess of $15,000 in merchandise in stock on the date of the fire is not in harmony with the best commercial practice which we assume was followed by plaintiff: an inventory proportionally in excess to that required by the volume of business.

"11. Likewise plaintiff did not place the court in a position to make an adjudication as to the loss of equipment. The cost was a factor for consideration. But in the present case there was lacking the evidence to indicate the 'actual value in cash of the property at the time of the loss . . . ' which is the measure of the loss stipulated in the policy.

### "Conclusions of Law

"1. The present action is based on an insurance contract covering the risk of damage to the merchandise and equipment of the insured, plaintiff herein, located in the premises described therein and resulting from a fire. It was incumbent on plaintiff to establish the total amount of the loss, and he failed to do so. See *Dragoni* v. *U.S. Fire Ins. Co. Etc.*, 36 P.R.R. 425 (1927); *García* v. *Palatine Ins. Co., Ltd.*, 43 P.R.R. 60 (1932); and specifically *C. López Pérez, Inc.* v. *Western Assur. Co.*, 40 P.R.R. 154, 155 (1929), where it is upheld that:

'. . . the burden of proof as to the loss was on the plaintiff. . . .'

"Plaintiff sought to prove that the insurer adopted an attitude of indifference and lack of cooperation in the transaction of his claim. The evidence in the record, consisting of letters exchanged between plaintiff and the insurance company's adjuster (Exhibits 2 to 14 inclusive) shows, on the contrary, a reasonable diligence on the part of the insurer to comply with the provisions of the insurance contract, as the latter binds it. However, plaintiff was the one who, notwithstanding the continuous request of the insurer, did not act accordingly, but sought to obtain the payment of the alleged loss without producing, at least, some evidence to reasonably support the amount claimed. He merely submitted to them a bunch of purchase invoices for the years 1962, 1963, and 1964. This, at the most, showed the purchases during those years, but not the stock at the time of the fire, which is the basis for the claim." (Exh. IX.)

■ In this appeal plaintiffs allege the commission of three errors. The first two refer to the incidents related to the motions requesting summary judgment. We need not pass on them. The review of a judgment rendered after a trial on the merits is under our consideration.

The third assignment attacks the findings of fact made by the trial court on the ground that the same are contrary to the evidence and to the stipulations agreed upon between the parties.

■ We cannot conclude from an examination of the record that the trial court erred in deciding that plaintiff had not placed it in a condition to determine the total amount of the loss suffered by them, which, according to the insurance contract, was the actual value of the merchandise and equipment lost in the fire. Our task of deciding whether or not the judgment is correct is rendered more difficult by the fact that appellants have not sent to this Court the transcript of Agramonte's testimony offered at the trial, which is the only oral evidence considered by the trier of the facts to render judgment.

The judgment of the Superior Court, Bayamón Part, will be affirmed.